A93A2173. THE STATE v. CRANK.
(441 SE2d 531)

SMITH, Judge.

Steve Crank was charged with possession of marijuana with intent to distribute, OCGA § 16-13-30 (j) (1). His motion to suppress illegally obtained evidence was granted, and the State appeals. See

OCGA § 5-7-1 (4).

On March 11, 1993, Deputy Chris Cannon of the Walton County Sheriff's Department obtained a "no knock" warrant to search Crank's person and his home premises and surrounding curtilage, described as "the entire residence, outbuildings, and vehicles located on the Monroe/Jersey Road[,] Walton County, Monroe[,] Georgia." The purpose of the warrant was to look for marijuana; drug manufacturing paraphernalia, raw materials, or equipment; records of illegal drug transactions; moneys traceable to such transactions or found in close proximity to controlled substances; and "[o]ther property used, or intended for use, to facilitate the unlawful manufacture, distribution, dispensing, or possession of controlled substances."

Cannon obtained the warrant based on his affidavit stating that within the previous 72 hours a reliable confidential informant told him he saw a quantity of marijuana packaged for individual sale at Crank's home and observed Crank selling marijuana to individuals there. Cannon and other law enforcement officers also had received numerous anonymous complaints about Crank's distribution of marijuana from his home. Cannon sought a "no knock" entry. This was based upon his belief and experience that "possession of weapons is often associated with illegal possession and trafficking in narcotics" and his concern "that there could be a number of persons at the residence capable of concealing or destroying contraband."

At the beginning of the hearing on the motion to suppress, the State conceded — and offered to stipulate — that there was no probable cause to believe contraband would be found on Crank's person. Later in the hearing, the State further conceded there was no probable cause to believe contraband would be found in Crank's car. Deputy Travis Brown of the Walton County Sheriff's Department participated in executing the warrant and was the only witness called at the hearing. He testified that officers from several different jurisdictions were involved in executing the warrant. Brown testified he knew Crank personally, was aware of his reputation as a karate expert, and had received information that Crank was a man with a temper who liked to fight with police officers. Confidential informants informed the officers that Crank was armed at all times and kept numerous firearms, including automatic weapons, shotguns, and handguns "within easy reach" at his home. One weapon was reputedly kept over the doorway and used to greet visitors. This information prompted a concern about safety, and the officers concluded it would be best if they detained Crank as he left his home, rather than executing the "no knock" warrant while Crank was at home.

However, the location of Crank's home on a rural road and the nature of the surrounding terrain led the officers to fear that their presence near the residence would be detected readily, either by

Crank or by prospective drug purchasers. Since the officers were familiar with Crank's car,[1] surveillance was set up at the closest intersection on either side of Crank's house. If Crank left his house, either way he turned he would necessarily pass one of the surveillance teams. His vehicle was also monitored by officers in unmarked police cars, who drove by the house periodically to see if it was still there.

Brown, along with three other officers, was in a marked Walton County Sheriff's Department patrol unit stationed at the intersection on the Monroe side of Crank's house. Two to three hours after the surveillance began, he observed Crank's vehicle pass the intersection. However, before he could safely pull out to follow Crank, several other vehicles came between the patrol car and that of Crank. It was also difficult to pass on the winding road, so the officers were nearing the Monroe city limits, two or three miles away from Crank's residence, before Brown was able to turn on his blue lights and stop Crank's car. Just before the stop was made, Brown noticed there were two people in the car, and he later determined Crank was not driving.

When the car was stopped, a cursory search was performed on it, and the occupants of the car were patted down for weapons. Crank was then served with the search warrant, and Brown told him the officers would take him back to the house to execute it. Brown testified that he informed Crank they would have to get the car off the road. He asked Crank if he wanted to have the car towed or if he would prefer that one of the officers drive it back to his residence. Crank was given no other options. When Crank objected to the car being towed, Brown asked if one of the officers could drive the car, and Crank consented. In fact, he assisted the officers when they had difficulty starting the car.

The officers then returned Crank, the driver, and the car to Crank's home. The search of the house turned up only marijuana seeds and a prescription drug not in its original container. However, a thorough search of the car after it was returned to the curtilage of Crank's mobile home uncovered a plastic baggie with over 20 hand-rolled cigarettes containing a leafy material. In addition, when Crank was arrested and asked if any more drugs were in the house, he pulled from inside his clothing another plastic baggie containing additional leafy material and handed it to the officers.

In his motion, Crank sought to suppress the marijuana found in his car and on his person and any statements made by him while in custody, arguing that they were obtained as a result of an illegal seizure of his person and his car. The State argued below, and con-

---

[1] Brown testified he had personally observed Crank in the car "ten or twenty different times in the Monroe area."

tends on appeal, that because Crank had just left his home and those premises were the subject of a lawfully issued search warrant, *Michigan v. Summers*, 452 U. S. 692 (101 SC 2587, 69 LE2d 340) (1981), the officers were authorized to stop Crank miles away and return him to the premises. The trial court granted Crank's motion to suppress on the ground that the seizure was authorized neither by the holding in *Michigan v. Summers* nor by probable cause or exigent circumstances. We affirm.

First, we agree with the trial court that the officers' conduct here exceeded the authority given under *Michigan v. Summers*. In that case, as police officers were about to execute a search warrant for residential premises, they encountered the owner descending his front steps. Id. at 693. The Supreme Court held that in requiring the homeowner to re-enter his house and remain there while it was searched, the officers did not violate his right to be secure against an unreasonable seizure of his person.

The general rule, of course, is that "every arrest, and every seizure having the essential attributes of a formal arrest, is unreasonable unless it is supported by probable cause." Id. at 700. The Supreme Court found that the detention in *Summers* was an exception to the general rule and was reasonable. Balancing the character of the intrusion against the reasons justifying it, the Supreme Court concluded that the justifications were great and the detention "surely less intrusive than the search itself." Id. at 701. In *Summers*, however, the homeowner was both found and detained immediately outside his own home, where no public stigma was involved. A neutral and detached magistrate had found probable cause to believe the law was being violated on those premises, authorizing a far more severe intrusion. Id. at 701-702.

The contrary is true here. Crank was seized miles from his home, on a public road, in his car. The intrusion was far greater. No magistrate had authorized a search of Crank or the car at that location, and the State concedes it had no probable cause to believe Crank had contraband on his person or in his car. Moreover, the justification against which the intrusion must be weighed was not as great here as in *Summers*. Although it was possible that Crank could flee, the officers knew Crank had left the premises designated in the search warrant and therefore could not reasonably have feared for their safety during a search of those premises. These circumstances do not justify an exception under *Summers* to the general rule prohibiting warrantless searches and seizures.

Second, even assuming that Crank could have been returned to his home under the authority of *Summers*, no justification exists under these facts for the seizure and subsequent search of the car, where most of the evidence sought to be suppressed was found. It

could not lawfully have been impounded as a result of Crank's lawful arrest, as no probable cause existed to arrest him. Moreover, impoundment and an inventory search would not have been reasonably necessary. "Impoundment of a vehicle is valid only if there is some necessity for the police to take charge of the property. See *South Dakota v. Opperman*, 428 U. S. 364 (96 SC 3092, 49 LE2d 1000) (1976)." *Whisnant v. State*, 185 Ga. App. 51, 53 (363 SE2d 341) (1987). The record shows that the driver of the car was licensed and driving under no disability. Impoundment is not permissible when, as here, another of the car's occupants is present and is capable of safely removing it. *State v. King*, 191 Ga. App. 706, 707 (382 SE2d 613) (1989); see *State v. Ludvicek*, 147 Ga. App. 784 (250 SE2d 503) (1978). Crank was offered only two options when questioned regarding the disposition of the car, and both options required return of the car to Crank's home. Here, as in *State v. Darabaris*, 159 Ga. App. 121 (282 SE2d 744) (1981), " '[h]ad the officers allowed [Crank] to express his preference as to disposition of his vehicle, all three of the state interests in impounding and inventorying a vehicle (i.e., protecting the owner's property, protecting the police from potential danger, and protecting the police from false claims of stolen or lost property) as well as the individual's right of privacy would have been protected. There was no necessity to impound the vehicle and, consequently the rationale for [an] inventory search did not exist.' " Id. at 124.

Nor can search of the car be justified by the warrant to search vehicles within the curtilage of the residence. The car would not have been at the residence but for the officers' unjustified actions in returning it. The trial court did not err in granting the motion to suppress.

*Judgment affirmed. Beasley, P. J., and Cooper, J., concur.*

DECIDED MARCH 2, 1994.

*Alan A. Cook, District Attorney*, for appellant.
*Dickinson, Noel & Peeples, Joseph S. Peeples, Scott P. Willis*, for appellee.