## A96A1667. FRITZIUS v. THE STATE.
(484 SE2d 743)

BIRDSONG, Presiding Judge.

After a stipulated bench trial, Fritzius was convicted on one count of possession of methamphetamine, a Schedule II controlled substance (OCGA §§ 16-13-26 (3) (B); 16-13-30 (a)), and one count of possession of a firearm during the commission of a crime (OCGA § 16-11-106 (b) (4)). He appeals from the denial of his motion to suppress evidence seized in what he contends was an illegal search, violative of the Fourth Amendment to the United States Constitution and of Art. I, Sec. I, Par. XIII of the Constitution of the State of Georgia. He makes no independent argument on the state constitutional

---

grounds, so we do not address that issue. *Null v. State*, 216 Ga. App. 641, 642 (455 SE2d 359).

Officer Beveridge, in uniform and accompanied by his drug detection dog, was preparing to participate with a police narcotics unit in executing a search warrant on a mobile home occupied by Henry Fallaw. Another officer who was conducting surveillance of the mobile home saw two men leave it, enter a vehicle and drive off. Officer Beveridge was asked merely to identify the occupants of the vehicle to see if one was Fallaw. While the search was conducted, the officer stopped the car approximately two miles away.

He requested the driver's license and proof of insurance, which the driver said he did not have because he had lost his wallet. The driver, who actually was Henry Fallaw, also said he believed he did have a valid license and gave the officer the name and birth date of his brother William. Beveridge noticed Fallaw was nervous and asked if he had any illegal weapons or drugs on his person. Fallaw first said no, then admitted he had two marijuana cigarettes in his back pocket. Beveridge took those and placed Fallaw under arrest.

Passenger Fritzius exited the vehicle at Beveridge's direction. He told the officer he had no illegal drugs or weapons on his person and consented to a search, which produced nothing. The car was registered to Fritzius, and he refused the officer's request for consent to search its interior. The officer brought the drug detection dog from his car and directed him to do an odor search of the car's exterior. The dog alerted to the vehicle's door, and a small plastic bag containing methamphetamine was found under the floor mat on the passenger's side where Fritzius had been sitting. A revolver was found under Fritzius' seat.

Fritzius contends the vehicle stop was invalid because it was not supported by reasonable, articulable suspicion as required under *Terry v. Ohio*, 392 U. S. 1, 23 (88 SC 1868, 20 LE2d 889). He does not complain independently of Beveridge's actions after the stop. Our analysis commences according to the following guide, derived from pronouncements of the United States Supreme Court. " 'Momentary detention and questioning are permissible if based upon specific and articulable facts, which, taken together with rational inferences from those facts, justify a reasonable scope of inquiry not based on mere inclination, caprice or harassment. An authorized officer may stop an automobile and conduct a limited investigative inquiry of its occupants, without probable cause, if he has reasonable grounds for such action — a founded suspicion is all that is necessary, some basis from which the court can determine that the detention was not arbitrary or harassing. (Cit.)' [Cit.]" *State v. McFarland*, 201 Ga. App. 495, 496 (411 SE2d 314). A *Terry* stop " 'must be justified by specific, articulable facts sufficient to give rise to a reasonable suspicion of criminal

conduct. [Cits.]' " *Tarwid v. State,* 184 Ga. App. 853, 854 (1) (363 SE2d 63).

Fritzius does not dispute that the search warrant for the mobile home was based upon probable cause to believe drug activity took place there. The warrant was about to be executed when the vehicle and its occupants left. Fritzius contends Beveridge had no suspicion the vehicle's occupants were engaged in drug activity but only stopped the car to identify the occupants. Beveridge testified he stopped the vehicle because it had just left the mobile home and another officer asked him to find out if Fallaw, who was named in the warrant, was in the car. Additionally, the record reveals a certain stipulation of facts which purports on its face to contain matters beyond that already in evidence. *Held*:

When a person is leaving a premises which is about to be searched pursuant to a warrant, a brief, momentary detention by law enforcement personnel is permitted when supported by articulable suspicion or probable cause. *Michigan v. Summers,* 452 U. S. 692, 699-700 (101 SC 2587, 69 LE2d 340). In *Summers,* a warrant had been obtained to search a house for narcotics. As the officers approached the house, they encountered owner Summers descending the front steps. They asked for his assistance in gaining entry and detained him while they searched the premises. In deciding the detention was supported by articulable suspicion, the Court examined both the character of the intrusion on Summers' liberty and personal security, and the justification for the intrusion. Id. at 700-701. As to the character, the Court noted that the detention was less intrusive than the search pursuant to the warrant, and that the fact that the detention occurred at the residence "add[ed] only minimally to the public stigma associated with the search itself." Id. at 701-702. As to the justification for detention, the Court noted the interest in preventing flight if any contraband was found, the interest in reducing the risk of harm to officers involved in the search, and the interest in facilitating the search by the resident's presence. Id. at 702-703. It also noted that a magistrate had found there was probable cause to believe someone in the residence was committing a crime, providing another "objective justification for the detention." Id. at 703.

"On reviewing a trial court's ruling on a motion to suppress, evidence is construed most favorably to uphold the findings and judgment and the trial court's findings on disputed facts and credibility must be accepted unless clearly erroneous. [Cit.]" *Burse v. State,* 209 Ga. App. 276 (433 SE2d 386). The Court found as fact, inter alia, that the vehicle was stopped because the police expected one occupant to be the resident of the search premises. The record does not reveal that this finding of fact is clearly erroneous within the meaning of

*Burse,* supra.

It is a well-established appellate rule that on appeal the evidence must be viewed in the light most favorable to support the verdict. *Grant v. State,* 195 Ga. App. 463, 464 (1) (393 SE2d 737). Thus, in determining whether the State met its burden of proof that the search and resulting seizure were legal, this Court must view the evidence of record in accordance with the dictates of *Grant,* supra. In determining the legality of a search, this Court can consider all evidence of record, including that found in pretrial, trial and post-trial proceedings. *Bonds v. State,* 188 Ga. App. 135 (372 SE2d 448); accord *Underwood v. State,* 218 Ga. App. 530 (1) (462 SE2d 434).

Review of the record in the light most favorable to supporting the verdict reveals that appellant consented to a stipulated bench trial and to these resulting stipulation of facts: "The car was, stopped in Clayton County. . . . Some of this is already in evidence. But it was stopped by Agent Beveridge as he *received information* that the defendant and the co-defendant who were driving in this defendant's car were *leaving a location* for which they had a *search warrant for drugs.*" (Emphasis supplied.) The record reveals this stipulation of fact, which on its face professed to contain facts beyond those already in evidence, establishes that the detaining officer *had received* information before the stop that the occupants in the car had been observed leaving the search scene. Moreover, at the suppression hearing the detaining officer testified that he was aware not only that the search warrant was issued for a specific trailer lot location but also that the subject of the warrant was co-defendant Henry Calhoun Fallaw (who later was determined to be a co-occupant of the detained vehicle), and that he was to stop the departing vehicle to see if the co-defendant was an occupant thereof.

The dissent has interpreted the dictates of the United States Supreme Court in *Michigan v. Summers,* supra, in too restrictive a manner. The Supreme Court clearly held in *Summers,* supra at 703-705: "The existence of a search warrant, however, *also* provides an objective justification for the detention. A judicial officer has determined that police have probable cause to believe that someone in the home is committing a crime. Thus a neutral [and detached] magistrate rather than an officer in the field has made the critical determination that the police should be given a special authorization to thrust themselves into the privacy of a home. The *connection of an occupant* to that home gives the police officer an easily identifiable and certain basis for determining that suspicion of criminal activity justifies a detention of that occupant. . . . If the evidence that a citizen's residence is harboring contraband is sufficient to persuade a judicial officer that an invasion of the citizen's privacy is justified, it is *constitutionally reasonable* to require that citizen to remain while

officers of the law execute a valid warrant to search his home. Thus, for Fourth Amendment purposes, we hold that a warrant to search for contraband founded on probable cause implicitly carries with it the limited authority to detain the occupants of the premises while a proper search is conducted." (Footnotes omitted; emphasis supplied.) Further, it was recognized in *Summers*, supra at 702, that there exists an obvious "legitimate law enforcement interest in preventing flight in the event that incriminating evidence is found" during a lawful search. In addition to this body of law we must also consider that the existence of an articulable suspicion can be based on the collective knowledge of law enforcement officials (*Tarwid v. State*, supra at 855), and that the detaining officer was entitled to rely on the information given him by a fellow officer in the formation of an articulable suspicion (*Chumbley v. State*, 180 Ga. App. 603, 604 (349 SE2d 823)).

Reliance upon *State v. Crank*, 212 Ga. App. 246 (441 SE2d 531) also is misplaced. *Crank* may be distinguished in several ways. We did not address the legality of the stop in *Crank* because it was not challenged. The contention was that the search and seizure of Crank's person and his car were illegal because they were not accomplished at his home. Here, Fritzius contends only that the *stop* was illegal.

Second, in *Crank* the trial court *granted* the motion to suppress; in this case it was denied. Just as we viewed the evidence in that case to favor Crank, in this case we must view it to favor the State. " 'On reviewing a trial court's ruling on a motion to suppress, evidence is construed most favorably to uphold the findings and judgment and the trial court's findings on disputed facts and credibility must be accepted unless clearly erroneous. (Cit.)' [Cit.]" *Rider v. State*, 222 Ga. App. 602 (475 SE2d 655).

In determining whether a search or seizure is constitutionally prohibited, "the ultimate test for the validity of the police's conduct is whether, under the circumstances then confronting the police, their conduct was reasonable within the meaning of the Fourth Amendment." (Emphasis omitted.) *Jones v. State*, 187 Ga. App. 421, 424 (370 SE2d 784); accord *Duvall v. State*, 194 Ga. App. 420, 421 (390 SE2d 647). It would appear reasonable within the meaning of the Fourth and Fourteenth Amendments for a police officer, knowing that certain persons and premises were the subject of the *immediate* execution of a search warrant, to detain temporarily a vehicle containing occupants who had *just departed* the premises to be searched in order to identify the occupants and to see if one of them was a person named in the warrant. Under such circumstances, the detention would be minimally intrusive and neither an arbitrary nor capricious exercise of police power. This becomes apparent particularly when

the circumstances surrounding the detention are balanced against the legitimate law enforcement interests identified in *Summers, supra, and,* additionally, when (as appears from the reasonable inferences to be drawn from the record in this case) the detention is effected under circumstances somewhat analogous to a fresh pursuit.

Further, it is not significant to the disposition of this appeal that the police's communication with the detaining officer merely requested assistance in stopping the vehicle so that it could be ascertained if one of the occupants was Fallaw. The temporary detention of the vehicle and its occupants for the limited and minimal intrusive purpose of ascertaining identity was, under the totality of the existing circumstances, reasonable. The absence of any instructions as to what to do with Fallaw, if he were found in the vehicle, does not negate the reasonableness of the police's detention of the vehicle and its occupants. Moreover, once Fallaw was identified, the detaining officer could communicate with the officers requesting the vehicle stop to obtain guidance whether to return Fallaw to the search scene or to search him at the location of his detention, according to whatever conduct would be compatible with and facilitate the execution of the search warrant according to its terms.

This case is in harmony with *Bales v. State,* 216 Ga. App. 856 (456 SE2d 112). Appellant's various contentions in support of his enumeration of error are without merit.

*Judgment affirmed. Andrews, C. J., McMurray, P. J., Pope, P. J., Johnson and Smith, JJ., concur. Beasley, Ruffin, JJ., and Senior Appellate Judge Harold R. Banke dissent.*

BEASLEY, Judge, dissenting.

This case is governed by the principles applied in *Michigan v. Summers,* 452 U. S. 692 (101 SC 2587, 69 LE2d 340) (1981).

First, in connection with the facts, it is notable what is not in evidence. There was no testimony that a reason for the stop was to connect one of the car occupants to drugs, if found, for which the officers had a warrant to search. There was no explanation of what the officer intended to do if one of the occupants was Fallaw. There was no testimony about the information that provided the basis for the warrant. Neither the warrant nor the affidavit is in the record. There was no testimony that either the officer who asked Officer Beveridge to stop the car, or Beveridge himself, had any reason to suspect that there would be contraband in the car.

The State points to *Bales v. State,* 216 Ga. App. 856 (456 SE2d 112) (1995), and *Setser v. State,* 209 Ga. App. 57 (432 SE2d 652) (1993), in support of its position that the stop was founded on articulable suspicion. In *Bales* the nonresident defendant was detained when he arrived at a residence where a warrant search was taking

place and had already produced narcotics. In *Setser* the defendant arrived at the site of a roadside automobile search and was there detained. The presence of the defendant at the search scene in these cases, and in *Summers*, presented a potential risk of harm to the officers, which was a noted justification in *Summers*. The court in *Setser*, supra at 58 (1), specifically referred to the officers' interest in self-protection. The *Bales* court did not do so but did note that the officers performed a weapons frisk. Additionally, in *Bales* "the police clearly had an articulable reason to suspect defendant of criminal activity, since the residence at which defendant arrived contained illegal drugs, and since a passenger in his vehicle was just arrested for possession of a controlled substance." *Bales*, supra at 857.

Risk of harm was not present here as the car was stopped two miles from the residence. Further, a detention away from the search scene creates a public stigma at the location which, when a defendant is detained at his residence, is already present because of the connection produced by proximity. *State v. Crank*, 212 Ga. App. 246, 249 (441 SE2d 531) (1994).

The State also cites *Hayes v. State*, 202 Ga. App. 204, 205 (414 SE2d 321) (1991), in which the appellant drove up to premises where a search warrant was about to be executed, stopped close enough to speak to a person there, then drove away. The court ruled that this, coupled with the fact that a warrant had been issued on probable cause to believe that drug activity was conducted on the premises, was sufficient for the court to justify the officer's suspicion that the defendant driver was engaged in the suspected illegal activity. Id. at 204-205.

There is no behavior of either Fallaw or Fritzius connecting them to the suspected drug activity. There is only the warrant that specified the residence, not the car in which they left the curtilage and drove away. Even if it is inferable that a resident of a search premises is engaged in the suspected activity, the officers did not know either of the occupants of the car was a resident. Compare *State v. Deshon*, 194 Ga. App. 425 (390 SE2d 651) (1990), where the police knew the resident as he drove away.[1] Finding out whether one of the car occupants was Fallaw was the only stated reason for the stop. None of the State's cases shows the vehicle stop here to be justified by the criteria analyzed in *Summers* or otherwise.

*Crank*, supra, is more analogous. He contended his person and car were illegally seized. Id. at 248. A warrant was to be executed on Crank's home. Because of what the police knew of Crank's penchant for weapons and fighting with police officers, the officers decided to

---

[1] Neither *Hayes* nor *Deshon* was analyzed in accordance with *Summers*.

stop and detain Crank outside his home for safety reasons and to have him facilitate the search, but Crank was "two or three miles" from the residence before the officers stopped him. Id. at 248. There, as here, "[n]o magistrate had authorized a search of Crank or the car at that location," and the seizure did not fit the parameters established by *Summers*. *Crank*, supra at 249. Rather, the stop and detention were illegal despite the fact that the officers were serving two of the interests recognized in *Summers*: reducing the risk of harm and facilitating the search.

This case, like *Crank*, differs from *Summers* in the great distance from the search premises at which the detention occurred. Although "the connection of an occupant" to the search warrant premises in *Summers*, supra at 703, made it "constitutionally reasonable to require that citizen to *remain* while officers of the law execute a valid warrant to search his home," (footnote omitted; emphasis supplied) id. at 705, *Summers* does not stand for the proposition that a person with such a connection to a search premises may be detained wherever he may be found. If the seizure in this case is constitutionally permitted, a resident could be seized whenever found, because of his connection with the premises, when a search warrant for the person's residence is being executed.

Most of the operable *Summers* factors are not present. At the time of the stop, none of the officers even knew that one of the car occupants was a resident of the mobile home. The roadside stop was certainly more intrusive than the search as it pertained to passenger Fritzius. The stop produced a public stigma separate from any associated with the mobile home search. There was no evidence the police feared Fallaw or Fritzius would flee, nor is any inferable from the testimony; there is no suggestion that the men were aware of any police activity at the trailer before Officer Beveridge stopped their car. The distance dissipated any danger to officers conducting the search. Compare *Allen v. Commonwealth of Virginia*, 353 SE2d 162 (Va. Ct. App. 1987) (departing van stopped when met leaving residence on long driveway, but close enough to building for there to be concern of crossfire between van and residence). Nor is there any evidence that would allow the inference Fritzius and Fallaw were detained to facilitate the search; Officer Beveridge did not serve the warrant upon Fallaw, and the mobile home was actually entered while Officer Beveridge was trying to find the vehicle in which Fallaw and Fritzius were driving. Compare *United States v. Cochran*, 939 F2d 337 (6th Cir. 1991) (defendant's car stopped "a short distance" after leaving residence so defendant could help officers gain peaceful entry and avoid guard dog).

The only justification given for the stop was that the police wanted to know if Fallaw was in the car. That alone does not justify

such a governmental intrusion into a person's freedom of movement. In fact, the officer did not end the detention when the information he gained was that neither man was the named resident. The only apparent relationship the men had to the trailer was their departure from it. They took no actions suggestive of participation in drug trade or possession. Neither the warrant itself, nor whatever was the probable cause on which it was based, alone provided an articulable suspicion to justify the stop.

The stipulation announced at trial adds nothing to the evidence concerning what information was available to the police prior to the stop. The stipulation was only that Officer Beveridge "received information that the defendant and the co-defendant who were driving in this defendant's car were leaving a location for which they had a search warrant for drugs." This merely identified the persons who were then known at trial to be William Fritzius and Henry Fallaw.

The reason the court gave for denying the motion to suppress was that the police believed one of the persons in the car was Fallaw, "an occupant of the residence they had a warrant to search." Even if that reason is supported by the evidence, it does not follow that the interception was therefore valid. The State did not explain what was to occur if the officer learned that one of the men was Henry Fallaw. " '[R]easonable suspicion of criminal activity warrants a temporary seizure for the purpose of questioning limited to the purpose of the stop.' . . . [Cits.]" *Jones v. State*, 187 Ga. App. 421, 423 (370 SE2d 784) (1988). The State has not advanced any line of questioning that would advance a State interest which would validate the distant stop. The officer did not stop the car to find out if Fallaw was inside so the officer could inform him of the search in order to allow him to return and facilitate it if he chose to; not only was such an interest not articulated on the record or acted on at the scene, but the searching officers entered the trailer before Fallaw was stopped.

If the police halted the car to identify Fallaw with the intention of detaining him until they had completed their search, again, a purpose the State did not articulate, that would not be a valid purpose but would amount to an arrest without probable cause. There was no warrant for his arrest. A proper analysis of the stop and detention in this case in accordance with the rationale of *Michigan v. Summers*, supra, compels the conclusion that the trial court erred.

I am authorized to state that Judge Ruffin joins in this dissent.

Judge Harold R. Banke, dissenting.

I separately dissent because the majority creates new law from whole cloth with no legal or factual justification for so doing. Controlling legal authority permits police to detain a person found on the premises during the execution of a search warrant, but does not

authorize police to stop and seize individuals not found on the premises. *Michigan v. Summers*, 452 U. S. 692 (101 SC 2587, 69 LE2d 340) (1981).

Although the majority opinion purports to cloak itself in *Summers*, a careful reading of that case strips bare the majority's legal predicate. By quoting only a snippet of *Summers*, the majority misconstrues *Summers* to hold that a search warrant for a place carries implicit or explicit authority to stop and seize a person not at the place specified by the search warrant. Compare *Summers*, 452 U. S. 692. What the Supreme Court actually determined was that the officers' detention of Summers on his property was not violative of the Fourth Amendment because "a warrant to search for contraband founded on probable cause implicitly carries with it the limited authority to detain the occupants of the premises while a proper search is conducted." (Footnotes omitted.) Id. at 705. The Supreme Court noted, "this argument could not justify the initial detention of respondent *outside* the premises described in the warrant." (Emphasis supplied.) Id. at 694.

The majority's out-of-context quote from *Summers* is misleading and heads this Court down a slippery slope. Nowhere in *Summers* did the Supreme Court hold that government officials are authorized to stop and search an individual located miles away from the premises being searched. By erroneously extending *Summers* to authorize an off-premises detention, the majority misses the essence of *Summers,* which analyzes the reasonableness of compelling an individual to remain on his property while a lawful search is conducted. Inasmuch as the Supreme Court's opinion was narrowly tailored to permit the police to intercept and detain a resident on his premises, the majority's expansion of the rule of *Summers* is unjustified.

In this case, Fallaw, whose premises were being searched, was driving Fritzius' vehicle. Neither Fritzius' vehicle nor Fritzius was named in the search warrant for Fallaw's trailer. The evidence Fritzius sought to suppress was obtained during a search of his vehicle. The State offered no valid grounds for stopping Fritzius' vehicle, miles away from the trailer, asserting only that the police wanted to ascertain whether Fallaw was inside the car. Yet the State's conduct far exceeded that asserted purpose. *Summers* and its progeny do not authorize the stop and search at issue here.

Nor can the majority show the application of any exception to the warrant requirement. Under extremely rare circumstances under nonbinding federal law, a person may be detained as he leaves the premises subject to the search warrant where his presence is essential to the execution of the warrant. See *United States v. Cochran*, 939 F2d 337, 339 (6th Cir. 1991) (police could lawfully stop vehicle immediately after it exited the residence where defendant's presence

was crucial due to dangerous and menacing guard dog on premises). In this case, the presence of Fritzius, a nonresident of the trailer, was not essential for the safe execution of the warrant. Nor did the State claim that Fallaw's presence was needed, inasmuch as agents were already in the process of conducting the search when Fallaw and Fritzius were detained.

Notwithstanding the claim to the contrary, this case is controlled by *State v. Crank*, 212 Ga. App. 246 (441 SE2d 531) (1994), where we upheld the suppression of evidence found in Crank's vehicle. In *Crank*, police had a warrant for Crank's person, premises, and vehicles located on his premises. Id. at 247. Due to concern for police safety, because Crank was known to be armed at all times and had a known proclivity for fighting with police, police set up surveillance to intercept him a safe distance from his home. After Crank was stopped and detained two or three miles from his home, his vehicle, which had been specified in the search warrant, was impounded and searched. We affirmed the trial court's grant of Crank's motion to suppress because the seizure was not authorized by *Summers*, probable cause, or exigent circumstances.

The facts in this case are even more compelling because here, unlike in *Crank*, the police had no search warrant for Fritzius or his vehicle. Because the State failed to show probable cause, exigent circumstances or any application of an exception to the Fourth Amendment, Fritzius' motion to suppress the search of his vehicle should have been granted.

In a circuitous effort to distinguish *Crank*, the majority mischaracterizes the record by stating that Fritzius challenged only the legality of the stop. Fritzius' motion to suppress expressly provided, "The search and seizure complained of was a violation of the Fourth Amendment." Fritzius' motion demanded the suppression of evidence "obtained by virtue of the illegal search." Fritzius' appellate brief echoes this argument.

*Bales v. State*, 216 Ga. App. 856 (456 SE2d 112) (1995) provides no support for the majority's position. In that case, while the police were conducting a lawful search, Bales suddenly arrived in a vehicle at the premises being searched. Having discovered narcotics and being on the lookout for the occupant of the house, police had reasonable articulable suspicion to authorize a brief investigative stop of Bales to determine whether he was that person. Id. at 856-857.

Here, the State cannot show the requisite justification for a brief investigatory stop. *Burdette v. State*, 210 Ga. App. 471, 472-473 (436 SE2d 502) (1993); see *Delaware v. Prouse*, 440 U. S. 648 (99 SC 1391, 59 LE2d 660) (1979) (specific and articulable facts which taken together with rational inferences are needed to justify government's intrusion). Ascertaining whether Fallaw was inside Fritzius' vehicle,

without more, cannot support the invasion of Fritzius' rights. Such conduct was plainly an unlawful intrusion violative of the Fourth Amendment. *Vansant v. State*, 264 Ga. 319, 320 (2) (443 SE2d 474) (1994).

Even if *Summers* did apply to the facts in this case, the stop was improper. As the dissent correctly concludes, none of the *Summers* factors justified the stop. Because this stop was outside the premises described in the search warrant, and the State could not show that Fallaw's presence was essential to effectuate their search, it could not be justified by the warrant. See *United States v. Cochran*, 939 F2d at 339. Nor was there any evidence that the officers were at risk of harm from Fallaw or that the officers were preventing Fallaw's flight. *Summers*, 462 U. S. at 702-703.

Under the holding of the majority, law enforcement officials may now temporarily detain vehicles containing persons who recently departed premises subject to the execution of a search warrant. Outside of misapplying *Summers*, the majority cites absolutely no authority for expanding the scope of police power while constricting the safeguards of the Fourth Amendment. Defining the parameters of this new rule authorizing the "fresh pursuit" of a person who has left premises subject to a search warrant will doubtlessly generate endless controversy and countless motion hearings.

For these reasons, I respectfully dissent. I am authorized to state that Judge Ruffin joins in this dissent.

DECIDED MARCH 21, 1997.

*Billy J. Dixon*, for appellant.
*Robert E. Keller, District Attorney, Todd E. Naugle, Assistant District Attorney*, for appellee.