A98A2137. THE STATE v. DILLS.
(514 SE2d 917)

Judge Harold R. Banke.

Charles Jeffrey Dills was charged with possession of methamphetamine with intent to distribute and possession of marijuana. In its sole enumeration, the State seeks reversal of the trial court's order suppressing evidence seized during a search of his person.

This case arose after members of the Appalachian Drug Task Force obtained a warrant to search the person and premises of Jeff and Angela Dills for "methamphetamine, scales, drug packaging, recorders of transaction, and U. S. currency." In the requisite description of the persons and premises to be searched, the warrant referred to "Attachment A" which stated,

> [t]he persons, premises, and vehicles of Jeff and Angela Dills in Fannin County, Georgia. From the intersection of Highway 5 and Highway 515 travel north on Highway 5 for a distance of 3.9 miles to County Road 115 (also known as Old Highway 5), which is a paved road to the right. Travel County Road 115 for a distance of .6 mile [sic] to a dirt road known as Dills Road . . . [to a] driveway on the left, which leads to and ends at a single family wood frame dwelling

with cedar siding and an attached front porch. The residence is located on a hill which is visible from Dills Road at the end of the driveway which is approximately .1 mile in distance.

See *Conrad v. State*, 217 Ga. App. 388, 389-390 (2) (457 SE2d 592) (1995) (search warrants which fail to satisfy the particularity requirement are invalid). The warrant did not describe Dills beyond giving his name.

In executing this warrant six days later, the Task Force members did not go to the house described in the warrant. Instead, they went to a location where Dills, a carpenter, was working construction. After asking Dills to identify himself, the members explained that they had a search warrant to execute on his residence and wanted him to accompany them. When Dills asked if he could secure the building site, one of the officers joined him inside and asked if he was armed. Dills answered in the negative. The officer then requested that he empty his pockets. Dills complied, but the officer noticed a small bulge remaining in Dills' right front pants pocket. The officer then patted Dills down and determined that the bulge felt like a pill bottle. Upon retrieving it, at this point the officer asked Dills, "[w]hat is this?" Dills replied, "speed." Although the officer "knew that drugs are kept in bottles," however, he did not know what was in this bottle. Dills then accompanied the officer to his home where the search warrant was executed and police seized scales, a rifle, a cigarette pack containing marijuana residue, and a rolled up dollar bill sitting on a marble square.

Dills moved to suppress, arguing that the warrant was insufficient to authorize the search of his person while not on the premises described in the warrant. At the suppression hearing, the trial court demanded that the State justify its search of Dills when he was not under arrest and was not at the address specified in the warrant. This the State failed to do. Officer Calvin Wilson who searched Dills believed that he could search Dills under the authority of the warrant. In the AFFIDAVIT FOR ARREST, Officer Wilson testified, "the accused [Dills] did possess methamphetamine on his person by having two clear plastic bags in pants pocket *at the time of* a *search warrant execution* on the accused." (Emphasis supplied.) Similarly, the REPORT OF SEIZURE TO DISTRICT ATTORNEY summarizes the circumstances of the seizure as follows: "[u]pon execution of search warrant, Dills was found to be in possession of methamphetamine and U. S. Currency. These items were located in his pants pocket." Wilson testified that when he searched Dills at a place not provided for in the warrant that "[I] knowed [sic] that the bulge felt like a — some type of bottle. From my experience, I know that drugs are kept

in bottles. I retrieved the bottle myself." Finding the State failed to sustain its burden of showing that the search of Dills' person was legal, the court suppressed the evidence relating to that search. *Held*:

The State argues that the warrant satisfied the particularity requirement because it named Dills and described his home. In the circumstances of this case, we disagree.

Our constitution guarantees that no warrant shall issue without a particularized description of the place to be searched and the persons or things to be seized. *Conrad*, 217 Ga. App. at 390 (2). Searches unsupported by independent probable cause that extend beyond the descriptions contained in the warrant are illegal.[1] See *Landers v. State*, 250 Ga. 808, 809-810 (301 SE2d 633) (1983).

The warrant at issue here did not authorize the search at the construction site, Dills' place of employment. It covered only searches at Dills' residence. See *Scott v. State*, 213 Ga. App. 84, 86 (1) (444 SE2d 96) (1994) (" ' "Search warrants are not directed at persons; they authorize the search of 'places' and the seizure of 'things,' and as a constitutional matter they need not even name the person from whom the things will be seized." ' ").

This case is controlled by *State v. Crank*, 212 Ga. App. 246 (441 SE2d 531) (1994), which illuminates the weakness of the State's position. In *Crank*, officers executing a "no knock" search warrant of the defendant's home and person set up surveillance near his home, but stopped and searched him several miles away on a public highway. *Crank*, 212 Ga. App. at 249. This court suppressed all evidence found on the defendant and in his car. Id. As in *Crank*, the officers here acted beyond the warrant's scope. Because the search of Dills at his place of employment lacked independent probable cause, extended far beyond the warrant's scope, and was solely a product of the Task Force members' discretion, it was illegal. See *Landers*, 250 Ga. at 809.

The record belies the dissent's contention that the validity of the search and seizure did not rise or fall on its authorization by the search warrant. On the contrary, the State's sole justification for its conduct was this search warrant. The dissent's argument that the search at the construction site was proper because the officer recognized Dills misses the point. Nothing prevented the Task Force members from seeking a search warrant of Dills at his place of business.

---

[1] To be valid, a search warrant must describe the person and premises with such particularity "that a reasonably prudent officer would be able to locate the person, premises, and property and know that he had authority to search those places without depending on his discretion." *Minter v. State*, 206 Ga. App. 692, 693 (2) (426 SE2d 169) (1992); *Cooper v. State*, 212 Ga. App. 34-35 (1) (441 SE2d 448) (1994). The descriptions contained in the warrant, taken as a whole, must be sufficiently particularized to exclude all others. *Minter*, 206 Ga. App. at 693 (1).

The dissent's discussion of the purported factual basis underlying the search warrant seeks to inject a red herring. At issue here is whether the police improperly executed the search warrant, not whether the search warrant was improperly obtained. Instead of awaiting Dills' return from work to the residence for which they had a warrant, the police opted to begin their search at Dills' place of employment. This was plainly improper.

Although the dissent gratuitously inserts the "plain feel" doctrine and *Terry* pat-down law into this case, those concepts have no application here. The officer's affidavit reveals that he deemed his search of Dills' person at his place of employment as being executed under the authority of the search warrant, not under *Terry v. Ohio*, 392 U. S. 1 (88 SC 1868, 20 LE2d 889) (1968). Absent a valid *Terry* search, the "plain feel" doctrine cannot come into play. See *Boatright v. State*, 225 Ga. App. 181, 182 (1) (483 SE2d 659) (1997). Even assuming solely for the sake of argument that the "plain feel" doctrine had been applicable, the officer never testified he knew what the object was before he invaded Dills' pocket to retrieve it. While it may be true that illegal drugs may occasionally be kept in pill bottles, so, too, may perfectly legal ones. The object at issue did not immediately manifest itself as being contraband. See id.

This search was not a lawful execution of the warrant. No evidence showed otherwise. To embrace the dissent's position that the police had sufficient information to conduct a search of Dills at his place of employment would eviscerate the Fourth Amendment's safeguard against general warrants. This we refuse to do.

In reviewing a trial court's decision on a motion to suppress, this court's responsibility is to ensure that there was a substantial basis for the court's decision. *Morgan v. State*, 195 Ga. App. 732, 735 (3) (394 SE2d 639) (1990). Here, there was. Where a trial court sits as the trier of fact, as here, its findings are analogous to a jury verdict and will not be disturbed where there is any evidence to support them. *Ward v. State*, 193 Ga. App. 137, 138 (387 SE2d 150) (1989). The record supplies ample evidence to support the court's findings. *Morgan*, 195 Ga. App. at 735 (3). In the absence of any authority permitting the search at Dills' place of employment, we cannot find that the trial court abused its discretion in granting the motion to suppress the evidence unlawfully seized from Dills' person. *Wells v. State*, 196 Ga. App. 133 (1) (395 SE2d 296) (1990) (standard of review).

*Judgment affirmed. McMurray, P. J., Blackburn, Ruffin and Eldridge, JJ., concur. Beasley, P. J., and Andrews, J., dissent.*

BEASLEY, Presiding Judge, dissenting.

I respectfully dissent.

The trial court granted the motion to suppress the items found on the person of Dills because it found that the search warrant did not sufficiently describe Jeff Dills so as to allow search of him at a place other than on the named premises, his residence. But a warrant satisfies the particularity requirement of the Fourth Amendment if it identifies a person by name. See *Thrall v. State*, 122 Ga. App. 427, 429 (1) (177 SE2d 192) (1970) ("a . . . warrant [naming a person] does particularly describe the person to be searched where that person is using the name [given]. A physical description is [unnecessary]."

Nevertheless, the validity of the search and seizure in this case does not rise or fall on its authorization by the search warrant. Assuming for the sake of argument that the warrant did not authorize a search of Dills outside of his premises, but not conceding so, the officer was constitutionally authorized to search the pocket and seize the bottle independent of the search warrant.

The search warrant was for "[t]he person and premises of Jeff Dills and Angela Dills." The residence was described in the search warrant and directions were given to its location. The warrant stated that the magistrate found probable cause to believe that the personal property which was to be sought and seized "is presently located on the person, premises, or property described above." The contraband and evidence of crime that were specifically to be found and seized were drugs, scales, packaging, "recorders" [sic] of transactions, and currency. Obviously, at least the drugs, records, and currency could very well be on the person rather than separate from the person and located only somewhere on the premises.

As shown in the officer's affidavit upon which the search warrant was based, the police had information on at least eight different occasions, from seven individuals, that Dills possessed and distributed methamphetamine and marijuana over a several-year period of time up to the incident for which he was arrested. In addition, a confidential informant obtained marijuana from Dills at his residence in a controlled purchase. Another confidential informant saw methamphetamine obtained by a companion from Dills at his residence, and yet a third twice saw methamphetamine obtained from Dills at his residence and Dills told this informant that he would sell methamphetamine to him. A fourth informant had purchased methamphetamine from Dills and had seen it at his residence on numerous occasions. A fifth source also divulged information regarding drug sales at Dills' home. A sixth source saw Dills distribute methamphetamine to third persons at least three times. At least one of the sales was outside the residence, when Dills was in his vehicle.

Armed with this information and the warrant, the officers went to the Dill residence, but Dills was not at home. He was working on

the construction of a home (not owned by him) about one and one-half miles away. The police went there to get him to come home while they searched his residence. He agreed to do so and asked first to secure the premises he was working on and to drive his truck home. Permission was granted, but the officers wanted to be sure he had no weapons because, for one thing, an officer would be accompanying him in Dills' vehicle. So Dills was asked if he had any weapons. He said no but an officer asked him to empty his pockets. He emptied one, which revealed $1,999. He took off his carpentry belt and began to walk off.

The officer noticed a bulge in one pocket and told him he had to empty all his pockets. Dills pretended to do so but the bulge was still there. So the officer patted him down, felt the bulge, knew that it felt like some type of bottle and from experience knew that illegal drugs were kept in bottles. The officer reached in and seized the bottle. In response to inquiry, Dills said it was "speed," which it was and which in part he is charged with.

A related concept to analyzing this search is the "plain feel" doctrine.

> Under the "plain feel" doctrine, an officer can seize contraband which is plainly identified through the officer's sense of touch during a valid *Terry* pat-down. If a police officer lawfully pats down a suspect's outer clothing and feels an object whose contour or mass makes its identity immediately apparent, there has been no invasion of the suspect's privacy beyond that already authorized by the officer's search for weapons; if the object is contraband, its warrantless seizure would be justified by the same practical considerations that inhere in the plain-view context.

(Citations and punctuation omitted.) *Boatright v.* State, 225 Ga. App. 181, 182 (1) (483 SE2d 659) (1997). The officer plainly felt that what Dills refused to reveal was a pill bottle which is commonly used to carry drugs. This fact was in harmony with the other information the officer had about Dills, insofar as methamphetamine possession and distribution were concerned.

*Howard v. State*, 220 Ga. App. 579, 582 (1) (469 SE2d 746) (1996), held admissible drugs found in a "hard object" discovered in defendant's groin area, which the officer did not testify felt like a weapon, where the defendant acted suspiciously about the object and there was a sense of urgency to the circumstances.

Drug container evidence was held admissible in *Seaman v. State*, 214 Ga. App. 878, 879 (2) (449 SE2d 526) (1994). During a pat-down an officer felt and then saw a corner of a clear plastic baggie in

defendant's pocket. The officer, who had no information this person was a drug possessor, testified that drugs are usually kept in clear plastic baggies. Inapposite is *Brown v. State*, 269 Ga. 830, 832 (2) (504 SE2d 443) (1998), where "[t]here was no testimony by the officer that due to prior experience he knew contraband could be carried in or attached to the type of paper Brown dropped [cits.]."

The combination of the information received from the informants, Dills' furtive conduct in not emptying the pocket with the bulge, and the feel of the bottle contour during a pat-down (which pat-down has not been challenged) makes the probable cause in the instant case even more substantial and compelling. What transpired, plus the nature of the items to be seized, plus the information which the officers had as set out in the affidavit, presented a probable cause basis for searching the pocket and seizing the bottle. Exigent circumstances necessitated the search at that point, as the item which Dills tried to hide would most undoubtedly disappear during the trip back to Dills' residence, if the officers waited to search him until he was at home. The officer was authorized to assure that Dills had no weapon, as they were about to let him drive his truck home, with an accompanying officer, to assist in the house search. The officer suspected that the bulge in Dills' pocket, which item he resisted removing and retained undisclosed when asked to empty his pockets, contained drugs, as experience told the officer that drugs are kept in bottles.

The order suppressing the evidence was in error.

I am authorized to state that Judge Andrews joins in this dissent.

DECIDED MARCH 19, 1999.

*Roger Queen, District Attorney, Abernathy & Ballinger, Joe W. Hendricks, Jr.*, for appellant.

*Weaver & Weaver, George W. Weaver, Jeffrey L. Floyd*, for appellee.