**FIRST DIVISION
BARNES, P. J.,
LAND and WATKINS, JJ.**

**NOTICE: Motions for reconsideration must be** *physically received* **in our clerk's office within ten days of the date of decision to be deemed timely filed.
https://www.gaappeals.us/rules**

**March 8, 2024**

# In the Court of Appeals of Georgia

A23A1769. STATE v. DE LA PAZ.

LAND, Judge.

The State appeals from the trial court's grant of defendant Jesus de la Paz's motion to suppress the results of a blood test for drugs. The trial court held that a warrant authorizing the drawing and testing of de la Paz's blood for alcohol did not also authorize the testing of that same blood for drugs. The State argues that the trial court erred because it did not read the affidavit and application for the search warrant *in pari materia* with the search warrant itself and conflated the drawing of de la Paz's blood with the analysis of that blood. The State also argues that the testing of de la Paz's blood for drugs was reasonable under the circumstances. Because the warrant in this case was specifically limited to the drawing and testing of de la Paz's blood for

alcohol (with no mention made of testing for drugs), we disagree with the State and affirm the ruling of the trial court.

"In reviewing the trial court's grant of the motion to suppress, we apply the well-established principles that the trial court's findings as to disputed facts will be upheld unless clearly erroneous and the trial court's application of the law to undisputed facts is subject to de novo review." (Citation and punctuation omitted.) *State v. Wilson*, 315 Ga. 613, 613 (884 SE2d 298) (2023). "Moreover, we bear in mind that the State has the burden of proving that evidence challenged in a motion to suppress is admissible." (Citation and punctuation omitted.) *Boles v. State*, 316 Ga. 209, 219 (3) (887 SE2d 304) (2023).

So viewed, the record shows that on February 27, 2022, around 3:00 a.m., Cherokee County sheriff's deputy Shauna Murphey arrived at a traffic stop to assist another deputy with a DUI investigation. During the DUI investigation, de la Paz arrived and told officers he was there to pick up some of the juvenile passengers on the scene. Deputy Murphey spoke with de la Paz, noticed that he smelled of alcohol and had "extremely bloodshot and glassy eyes," and asked whether he had been drinking. De la Paz admitted to consuming alcohol "within several hours of operating the motor

vehicle" and agreed to participate in a horizontal gaze nystagmus (HGN) field sobriety evaluation. De la Paz exhibited four of six clues of impairment but declined to perform the walk-and-turn or one-leg stand evaluation due to a broken foot. Deputy Murphey then placed de la Paz under arrest for driving under the influence of alcohol pursuant to OCGA § 40-6-39 (a) (1).

After placing de la Paz under arrest, Deputy Murphey read him the Georgia implied consent notice for suspects age 21 and over[1] and requested that he consent to a blood test. De la Paz declined. Deputy Murphey then completed an affidavit and application for a search warrant, stating that she "detected the strong odor of alcoholic beverage coming" from de la Paz, that de la Paz had "extremely blood shot and glassy eyes," and that de la Paz "admitted to consuming alcoholic beverages within several hours" of driving. "Given the totality of the circumstances," Deputy Murphey attested that "there [was] sufficient evidence of the crime of Driving Under

---

[1] The implied consent notice for suspects age 21 or over reads, in pertinent part, that "[t]he State of Georgia has conditioned your privilege to drive upon the highways of this state upon your submission to state administered chemical tests of your blood, breath, urine, or other bodily substances for the purpose of determining if you are under the influence of alcohol or drugs." OCGA § 40-5-67.1 (b) (2)

the Influence in the blood of the defendant." The affidavit and application "request[ed] two vials of blood to be drawn by qualified medical personnel from the defendant, to be placed in a GBI blood alcohol toxicology kit for evidence" and identified OCGA § 40-6-39 (a) (1), driving under the influence of alcohol, as the suspected crime justifying the warrant. Neither the affidavit nor the application made any reference to suspicion of drug use.[2] Deputy Murphey's application was granted by a Cherokee County magistrate judge at 4:39 a.m., and a search warrant was issued for "two vials of blood to be drawn by qualified medical personnel from the defendant, to be placed into a GBI blood alcohol toxicology kit for evidence" of the crime of "[OCGA §] 40-6-391 (a) (1) Dui– Driving Under The Influence Of Alcohol."

The GBI tested de la Paz's blood for alcohol, and results showed a blood alcohol content under the legal limit of .08%.[3] Without the benefit of a warrant

---

[2] Although Deputy Murphey's incident report indicates that de la Paz stated that he took medication for inflammation of his back, this information was not included in the application and affidavit for the search warrant, and we cannot consider it. See *Galloway v. State*, 332 Ga. App. 389, 391, n. 3 (772 SE2d 832) (2015) ("it is . . . clear that neither this Court nor the trial court can consider information that was not made available to the [magistrate] who issued the warrant").

[3] "A person shall not drive or be in actual physical control of any moving vehicle while . . . [t]he person's alcohol concentration is 0.08 grams or more at any time within three hours after such driving or being in actual physical control from alcohol

authorizing testing for drugs, the blood was later re-tested for substances other than alcohol. Results showed the presence of a muscle relaxer. De la Paz was charged with one count of driving under the influence (less safe) (alcohol), two counts of driving under the influence (less safe) (drugs), one count of driving under the influence (less safe) (combined influence), and one count of failure to maintain lane.

De la Paz then filed a motion to suppress the results of the May 10 blood test for drugs, arguing that the testing of his blood for drugs "exceeded the scope of the search warrant." De la Paz did not challenge the blood draw itself or the test for alcohol. After a hearing, the trial court granted the motion based on the fact that both the search warrant application and the search warrant limited the scope of the search to evidence of a violation under OCGA § 40-6-391 (a) (1), driving under the influence of *alcohol*. This appeal followed.

1. The State argues that the trial court erred in granting the motion to suppress because it did not read the affidavit for the search warrant *in pari materia* with the search warrant itself, and because it conflated the drawing of de la Paz's blood with the analysis of that blood. We disagree.

consumed before such driving or being in actual physical control ended." OCGA § 40-6-391 (a) (5).

OCGA § 40-6-391(a) establishes one crime of driving with impaired ability which may be committed in several alternative ways. See *Sapp v. State*, 184 Ga. App. 527, 527 (2) (362 SE2d 406) (1987). See also *Smith v. State*, 338 Ga. App. 635, 640 (5) (791 SE2d 418) (2016) ("OCGA § 40-6-391 (a) establishes a single crime of driving in a prohibited condition and subsections (1) through (5) merely define different ways of committing that one crime.") (citation omitted). As a result, "different facts are required to prove the alternative methods of committing the crime." *Smith v. State*, 239 Ga. App. 515, 516 (1) (521 SE2d 450) (1999). For example, while subsection (a) (1) prohibits a person from driving "[u]nder the influence of *alcohol* to the extent that it is less safe for the person to drive," subsection (a) (2) prohibits a person from driving "[u]nder the influence of *any drug* to the extent that it is less safe for the person to drive." (Emphasis supplied).

"One advantage of blood tests is their ability to detect not just alcohol but also other substances that can impair a driver's ability to operate a car safely." *Birchfield v. North Dakota*, 579 U. S. 438, 474 (136 SCt 2160, 195 LEd2d 560) (2016). See *also Meiklejohn v. State*, 281 Ga. App. 712, 714 (637 SE2d 117) (2006) (noting that "until the [blood] testing is performed, the state may not know the exact nature of the

6

violation" of OCGA § 40-6-391), abrogated on other grounds by *State v. Osterloh*, 342 Ga. App. 668, 672 n.16 (804 SE2d 696) (2017). An officer's authority to request, at the time of arrest, that a driver submit to chemical testing for alcohol or drugs derives from the implied consent provisions of OCGA § 40-5-55 (a). See *Massey v. State*, 331 Ga. App. 430, 432 (1) (771 SE2d 122) (2015). But because blood draws require a physical intrusion into the body, they impact an individual's privacy interests and, absent consent, require a warrant. See *Missouri v. McNeely*, 569 U.S. 141, 143 (133 SCt 1552, 185 LEd2d 696) (2013) (motorists have a "privacy interest in preventing a government agent from piercing their skin"). Thus, in the absence of consent, "a suspect's right under the Fourth Amendment to be free of unreasonable searches and seizures applies to the compelled withdrawal of blood, and the extraction of blood is a search within the meaning of the Georgia Constitution." (Citation and punctuation omitted.) *State v. Bowman*, 337 Ga. App. 313, 315 (787 SE2d 284) (2016).

A search warrant "may issue only upon facts sufficient to show probable cause that a crime is being committed or has been committed." (Punctuation and footnote omitted.) *Jones v. State*, 313 Ga. App. 590, 593 (2) (722 SE2d 202) (2012). "The warrant shall particularly describe the things to be seized and the search must be

limited to that matter described." (Citation and punctuation omitted.) *Grant v. State*, 220 Ga. App. 604, 607 (1) (469 SE2d 826) (1996). "Searches unsupported by independent probable cause that extend beyond the descriptions contained in the warrant are illegal." (Footnote omitted.) *State v. Dills*, 237 Ga. App. 165, 167 (514 SE2d 917) (1999). However, "the particularity requirement must be applied with a practical margin of flexibility, depending on the type of property to be seized, and a description of property will be acceptable if it is as specific as the circumstances and nature of activity under investigation permit." (Citation omitted.) *Palmer v. State*, 310 Ga. 668, 675 (2) (853 SE2d 650) (2021); *Reaves v. State*, 284 Ga. 181, 184 (2) (d) (664 SE2d 211) (2008) ("the Fourth Amendment's commands, like all constitutional requirements, are practical and not abstract"). Thus, when determining whether probable cause for a search warrant exists, a magistrate must make "a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the veracity and basis of knowledge of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in the place to be searched." (Citation and punctuation omitted.) *Csehy v. State*, 346 Ga. App. 747, 754 (2) (816 SE2d 833) (2018).

(a) In this case, it is clear that the search warrant is limited to the testing of de la Paz's blood for alcohol, with no authorization given for the testing for drugs. Similarly, the affidavit and application in support of the warrant make no request for, or mention of, the need to test the blood for anything other than alcohol. Accordingly, the State's argument that the trial court erred in failing to construe the warrant together with the affidavit and application is unpersuasive.

"In determining whether the particularity requirement is sufficiently met in the warrant, our courts read the warrant as a whole and consider other evidence, including, but not limited to, the supporting affidavit." (Citation and punctuation omitted.) *Bryant v. State*, 288 Ga. 876, 894 (13) (b) (708 SE2d 362) (2011). As the trial court found, neither the affidavit nor the application for a search warrant make any reference to suspected drug use. Rather, OCGA § 40-6-391 (a) (1), driving under the influence of alcohol, was the only suspected crime enumerated in the affidavit and application.

The State argues that the affidavit "employs more general wording related to DUI," because Deputy Murphey's affidavit stated that she placed de la Paz under arrest "for driving under the influence" and believed there was "sufficient evidence

9

of the crime of Driving Under the Influence of the defendant." However, the affidavit specifically notes that de la Paz was arrested for a violation of OCGA § 40-6-391 (a) (1), driving under the influence of *alcohol*, and the plain language of the affidavit requested only that the blood samples "be placed into a GBI blood *alcohol* toxicology kit." (Emphasis supplied). Similarly, the search warrant issued by the magistrate specified that "two vials of blood [were] to be drawn by qualified medical personnel from the defendant, to be placed into a GBI blood *alcohol* toxicology kit for evidence" of the crime of "[OCGA §] 40-6-391 (a) (1) Dui– Driving Under The Influence Of *Alcohol*." (Emphasis supplied). Thus, when read in concert with the affidavit and application, the warrant limited the search of de la Paz's blood to the purpose of obtaining evidence of his blood alcohol level and did not authorize the subsequent testing for drugs. See *Lockhart v. State*, 166 Ga. App. 555, 558 (2) (305 SE2d 22) (1983) ("A lawful search is limited to that which is described in the warrant . . . [and] [t]he authorized search may not be expanded to a more extensive search by the executing officers").

(b) The State argues that the trial court erred in granting the motion to suppress because it conflated the *drawing* of de la Paz's blood with the *analysis* of that blood.

Specifically, the State argues that once it lawfully obtained a sample of de la Paz's blood, it was not required to obtain a second warrant to analyze that blood. We agree that a second warrant was not required for the testing of de la Paz's blood for alcohol, as that testing was expressly contemplated and authorized by the warrant at issue. However, "the Fourth Amendment confines an officer executing a search warrant strictly within the bounds set by the warrant," *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U. S. 388, 395 n.7 (91 SCt 1999, 29 LEd2d 619) (1971), and "police actions in execution of a warrant [must] be related to the objectives of the authorized intrusion[.]" *Wilson v. Layne*, 526 U. S. 603, 611-614 (II) (119 SCt 1692, 143 LEd2d 818) (1999). Because that warrant was limited to alcohol testing and did not contemplate or authorize testing for drugs, the subsequent testing for drugs was unauthorized. See *Dills*, 237 Ga. App. at 167 (where the search of the defendant "at his place of employment lacked independent probable cause, extended far beyond the warrant's scope, and was solely a product of . . . discretion, it was illegal"); *Hogan v. State*, 140 Ga. App. 716, 718 (1) (231 SE2d 802) (1976) (where "officer's presence in defendant's dwelling was justified only by the warrant to search for a citizen's band radio[,] [t]he officer could not use that warrant as a pretext for launching a full scale

11

investigation as to the origins of [a rug] which was not incriminating on its face."). To avoid any confusion or ambiguity concerning this issue, we emphasize that two warrants are not required when law enforcement wishes to test a DUI suspect's blood. One warrant will suffice, but that warrant's terms and limitations must be honored by law enforcement and will be enforced by the courts.[4] See, e.g., *Mastrogiovanni v. State*, 324 Ga. App. 739, 742-743 (751 SE2d 536) (2013) (second warrant not required for forensic analysis of computer hard drive lawfully seized during child pornography investigation); *State v. Gerace*, 210 Ga. App. 874, 875 (1) (437 SE2d 862) (1993) (blood sample taken pursuant to implied consent law in connection with DUI investigation could not be subject to DNA testing in connection with rape investigation).

2. Having concluded that testing de la Paz's blood was outside the scope of the search warrant, we next consider the State's argument that the testing of de la Paz's blood was reasonable under the circumstances. We are unpersuaded.

---

[4] If the warrant was not specifically limited to testing for alcohol, this would present a different case. See *State v. Wenzel*, 987 N.W.2d 473, 482-485 (II) (B) (Iowa Ct. App. 2022) (warrant "on its face" authorized chemical analysis of defendant's blood for alcohol, controlled substances, and drugs where warrant cited a violation of Iowa law that "criminalizes operating while intoxicated by either alcohol, controlled substances, drugs, or some combination thereof").

"[A]s a general rule, an officer may not seize anything not specified in the warrant." *Qenkor Const., Inc. v. Everett*, 333 Ga. App. 510, 520 (3) (a) (773 SE2d 821) (2015). There are only two exceptions to this rule. "First, where the warrant contains a residual clause allowing officers to seize 'other evidence' of specifically enumerated crimes, officers may seize any such evidence discovered during the warrant's execution." (Citation omitted.) Id. Second, under the plain view doctrine, a police officer may seize evidence outside the scope of a search warrant if the evidence is in plain view, the officer has not violated the Fourth Amendment in arriving at the place from which he sees the evidence, and the incriminating nature of the evidence is immediately apparent. See id.; see also *George v. State*, 312 Ga. 801, 804-805 (865 SE2d 127) (2021).

The State, however, does not argue that either exception applies.[5] Instead, the State argues that because Deputy Murphey suspected that de la Paz was impaired, once the results of the alcohol testing showed that de la Paz's blood alcohol concentration was below the legal limit, it was reasonable for law enforcement to ask the GBI to test the blood sample they already possessed for drugs. While it may have been reasonable to suspect the presence of drugs after the results of the blood alcohol test became known, the fact is that law enforcement never obtained any search warrant authorizing the testing for drugs. And, absent de la Paz's consent, such a warrant was required. The warrant authorizing the drawing of the blood (and the testing of that blood for the presence of alcohol) did not excuse law enforcement from obtaining a warrant for drug testing since "[t]he ensuing chemical analysis of the [blood] sample to obtain physiological data is a further invasion of . . . privacy interests." *Skinner v.*

---

[5] We reject the State's contention that because the State had lawfully obtained a sample of de la Paz's blood for the purposes of determining its blood alcohol concentration, the results of any further testing of de la Paz's blood are "analogous" to finding that evidence in plain view. Although the State may have been in lawful possession of de la Paz's blood, the incriminating nature of the evidence was not immediately apparent without subjecting it to drug testing. Compare *Henson v. State*, 314 Ga. App. 152, 156-157 (723 SE2d 456) (2012) (officer discovered evidence of child pornography on computer in plain view where officer had valid warrant to search apartment for evidence, including electronic records, of illegal drug sales).

14

*R. Labor Executives' Assoc.*, 489 U. S. 602, 616 (II) (B) (109 SCt 1402, 103 LEd2d 639) (1989). In short, if law enforcement wished to test de la Paz's blood for drugs, they were required to either obtain his consent or obtain a warrant authorizing that testing. Here, they did neither.

For the foregoing reasons, law enforcement exceeded the scope of the search warrant issued in this case when it tested de la Paz's blood for the presence of drugs, and for that reason the results of that warrantless drug testing were properly suppressed.

*Judgment affirmed. Barnes, P. J., and Watkins, J., concur.*