A99A0022. THE STATE v. HADDOCK.
(510 SE2d 561)

ELDRIDGE, Judge.

The State of Georgia challenges the trial court's grant of defendant Steve I. Haddock's motions to suppress evidence. After finding that the trial court erred as a matter of law, we reverse.

At 10:42 p.m. on October 5, 1996, Officer Eric Bailey of the Kingsland Police Department stopped Haddock after observing him weaving over the yellow centerline of Scrubby Bluff Road in Camden County. After Officer Bailey and Officer Edward Green observed Haddock's slurred speech and difficulty walking to the back of his vehicle, and after noticing an odor of alcohol emanating from Haddock, Officer Green conducted a consensual field sobriety test. The officer determined that Haddock was intoxicated and arrested him for DUI. Officer Bailey gave Haddock the implied consent notice, and the officers transported Haddock to Kingsland Police Department for breath testing. The Intoxilyzer 5000 test revealed that Haddock's blood alcohol level was .256 grams.

Immediately following Haddock's arrest, Officer Robert Tartar conducted an inventory search of Haddock's vehicle. The Kingsland Police Department performed such search prior to towing and impounding a vehicle subsequent to an arrest. During the search, Officer Tartar found a green leafy substance, drug paraphernalia, and an open container of alcohol. Haddock was charged with DUI (less safe driver), DUI (alcohol concentration over .10 grams); possession of an open container of an alcoholic beverage while operating a vehicle; possession of less than one ounce of marijuana; and possession of a drug-related object for illegal purposes.

In February 1997, Haddock filed a motion to suppress the evi-

dence seized in the search of his vehicle. Haddock also filed a motion to suppress or, in the alternative, a motion in limine (hereinafter the "motion in limine") to exclude the test results of the Intoxilyzer 5000. After conducting a hearing on July 21, 1998, the trial court granted both motions. The State appeals these rulings. *Held*:

1. In its first enumeration, the State challenges the trial court's grant of Haddock's motion to suppress evidence seized during a search of his vehicle, which was conducted following Haddock's arrest for DUI. In his motion, Haddock claimed that the search was conducted without his consent and, therefore, violated his Fourth Amendment constitutional rights. We disagree.

"While the trial court's findings as to disputed facts in a ruling on a motion to suppress will be reviewed to determine whether the ruling was clearly erroneous, where the evidence is uncontroverted and no question regarding the credibility of witnesses is presented, the trial court's application of the law to undisputed facts is subject to de novo appellate review." (Citations omitted.) *Vansant v. State*, 264 Ga. 319, 320 (1) (443 SE2d 474) (1994).

During the motion hearing in this case, Officers Bailey and Green testified that Officer Tartar conducted the search of Haddock's vehicle immediately following Haddock's arrest for DUI, in order to inventory items in the vehicle prior to having it towed and impounded. Officer Green testified that he observed Officer Tartar completing an impound inventory sheet during the search. However, the officers were unable to produce this inventory sheet at the motion hearing.

After questioning the officers extensively regarding the availability of the inventory sheet, the trial court granted Haddock's motion to suppress, ruling that the evidence would not be admissible unless and until the State produced the impound inventory sheet. The trial court did not rule on Haddock's alleged constitutional violations.

We find that the trial court erred as a matter of law in granting Haddock's motion to suppress when such grant was based upon the State's failure to produce the impound inventory sheet. The absence of the impound inventory sheet should not have impacted the trial court's determination as to the admissibility of the evidence found during the search or whether the search violated Haddock's Fourth Amendment rights.[1]

---

[1] While such inventory sheet is not necessary to establish the foundation for admissibility of the seized items, it may affect the weight and credibility of the State's evidence against Haddock. See generally *Mincey v. State*, 257 Ga. 500, 504-505 (6) (360 SE2d 578) (1987). Therefore, good practice would suggest that the inventory sheet be tendered along with the evidence.

Although, under OCGA § 17-5-30 (b), the State has the burden of proving the legality of a search and seizure pursuant to a defendant's motion to suppress, the State presented uncontradicted evidence that was sufficient to carry its burden in this case. The evidence showed that the police officers stopped Haddock for DUI at 10:42 p.m. The stop was supported by probable cause, i.e., Haddock's weaving over the yellow centerline. Haddock parked his vehicle on the side of the road. Following a field sobriety test, the officers arrested Haddock and transported him to the Kingsland Police Department for breath testing.[2]

Accordingly, the inventory search was authorized pursuant to a lawful impoundment. Impoundment of a vehicle is valid when, following an arrest which is supported by probable cause, "there is some necessity for the police to take charge of the property. See *South Dakota v. Opperman*, 428 U. S. 364 (96 SC 3092, 49 LE2d 1000) (1976)." *Whisnant v. State*, 185 Ga. App. 51, 53 (2) (363 SE2d 341) (1987). In this case, Haddock had been driving his vehicle alone, so that there was no passenger to drive the vehicle back to Haddock's home (or, at least, away from the site of the traffic stop). Cf. *State v. Crank*, 212 Ga. App. 246, 250 (441 SE2d 531) (1994); *Whisnant v. State*, supra at 53 (2). Further, Haddock was in such an intoxicated condition that it was not reasonable to consult with him regarding the disposition of his vehicle; to leave the vehicle on the side of the road created a potential safety hazard and exposed the vehicle and contents to theft or to vandalism. Cf. *State v. Crank*, supra at 250; *State v. Darabaris*, 159 Ga. App. 121, 122-123 (282 SE2d 744) (1981). Therefore, this Court finds that the officers in this case acted reasonably when they arranged for the vehicle to be towed and impounded.

An inventory search prior to impoundment is justified in order to protect three distinct needs, as follows: "(1) protection of the owner's property while it remains in police custody; (2) the protection of the police from potential danger; and (3) the protection of the police against false claims of stolen or lost property. *South Dakota v. Opperman*, [supra]." (Punctuation omitted.) *State v. Darabaris*, supra at 122. The officers in this case testified that the search was performed immediately following Haddock's arrest, while the vehicle still was

---

[2] Under these facts, the search also was valid as an incident to a lawful custodial arrest of a person who had recently occupied the vehicle that was searched. *Sims v. State*, 197 Ga. App. 214, 215 (2) (398 SE2d 244) (1990), relying upon *New York v. Belton*, 453 U. S. 454, 460 (101 SC 2860, 69 LE2d 768) (1981); *Allison v. State*, 217 Ga. App. 580, 581 (1) (459 SE2d 557) (1995); *State v. Watkins*, 182 Ga. App. 431, 432-433 (356 SE2d 82) (1987). Thus, the evidence seized incident to a lawful arrest with probable cause for the arrest was admissible and would not violate any constitutional rights of the accused. Had the State justified the search as performed incident to an arrest with probable cause, such evidence should have been admitted by the trial court.

parked on the side of the road. Accordingly, the contemporaneous, pre-impoundment inventory search was authorized under the facts and circumstances of this case.

However, Haddock asserted in his motion that the search was conducted in response to an alleged statement he made prior to his arrest. Haddock did not testify and presented no evidence during the hearing. In response to this unsupported assertion, both officers denied that any such statement was made or that the search was conducted pursuant thereto.

After reviewing the entire record, this Court finds that the State presented sufficient evidence to establish that the search was lawful. Such evidence was not disputed by Haddock's mere assertions of illegality, which were not supported by any evidence at the hearing. See *Boatright v. State*, 192 Ga. App. 112, 118 (8) (385 SE2d 298) (1989). Therefore, the trial court erred in granting Haddock's motion to suppress the evidence seized during the impound inventory search of Haddock's vehicle.

2. In its second enumeration, the State asserts that the trial court erred as a matter of law in granting Haddock's motion to exclude the Intoxilyzer 5000 test results. We agree.

(a) During the hearing, the State submitted a certificate of inspection for the Intoxilyzer 5000, which read as follows: "This breath-testing instrument, Kingsland P. D. 68-000709, was thoroughly inspected, tested, and standardized by the undersigned on 8-22-96 and all of its electronic and operating components prescribed by its manufacturer are properly attached and are in good working order." The certificate was signed by the inspector and notarized the same day, August 22, 1996. This certificate was identified during the hearing by Officer Green. Therefore, it clearly meets the requirements for admissibility that have been promulgated by the Georgia General Assembly and construed by both the Supreme Court of Georgia and this Court.

"OCGA § 40-6-392 (f), by legislative fiat, specifically provides a foundation for the admission of a certificate of inspection. The general assembly determined that, 'notwithstanding any other provision of law,' . . . a certificate of inspection is self authenticating *when* it is 'prepared and executed, as prescribed in this subsection.' Id. Under the statute, the 'foundation' for the admission of such certificate is: (1) the certificate is signed under oath by the inspector; and (2) the certificate contains the requisite language of OCGA § 40-6-392 (f). Once completed as specified under the statute, the certificate 'is admissible in any court of law,' without further proof. Therefore, OCGA § 40-6-392 (f), itself, contains the 'proper foundation' for admission of a certificate of inspection. After this proper foundation has been satisfied, the document may be admitted. A further founda-

tion under the 'business records exception,' OCGA § 24-3-14 (b), is rendered unnecessary by legislative enactment." (Emphasis in original; footnote omitted.) *Jackson v. State*, 233 Ga. App. 568, 572-573 (504 SE2d 505) (1998), relying upon *Brown v. State*, 268 Ga. 76, 77 (485 SE2d 486) (1997).

Therefore, since the certificate in this case met all of the procedural requirements for admission, the trial court's grant of Haddock's motion in limine constituted error and must be reversed.

(b) However, even if the State had been required to establish separately that the certificate was admissible under the business records exception to the hearsay exclusion, the evidence presented in this case was sufficient to carry the State's burden on a motion in limine. See OCGA § 24-3-14 (b). Under OCGA § 24-3-14 (b), a written record of an act is admissible as proof of the act (1) if such record was made in the regular course of business and (2) if it was the regular course of business to make the record "at the time of the act . . . or within a reasonable time thereafter."

Contrary to the trial court's assertions during the hearing, there is no requirement that, in order to lay a proper foundation for the admission of an inspection certificate under the business record exception, the person who conducted the inspection of the machine, or someone who actually witnessed the inspection, appear in court to testify about the inspection or the completion of the certificate. See *Hertz Corp. v. McCray*, 198 Ga. App. 484, 485-486 (2) (402 SE2d 298) (1991) ("any person who is familiar with the method of keeping the records and can identify them may lay the necessary foundation" for admission under the business records exception).

In this case, Officer Green testified that the Kingsland Police Department's Intoxilyzer 5000 machine is inspected quarterly for accuracy. Officer Green personally witnessed the Intoxilyzer 5000 inspector during previous inspections of the machine, and specifically testified that the inspector routinely signed the certificate immediately following the inspection. Officer Green also testified that the inspection certificates are kept in the normal course of business and are stored in the records area at the police department. He also testified that he knew the notary for the City of Kingsland and recognized her signature on the inspection certificate. Further, the inspection certificate itself clearly shows that the inspector's signature was notarized on August 22, 1996, the same day as the inspection.

Accordingly, this case is distinguishable from recent cases wherein this Court found that the evidence presented by the State was insufficient to establish that the certificate had a sufficient indi-

cia of reliability to withstand a hearsay objection.[3] See also *Jackson v. State*, supra at 571, n. 3. The evidence in this case was more than sufficient to establish a foundation under the business records exception to the hearsay exclusion under OCGA § 24-3-14 (b).

(c) Finally, in his motion in limine, Haddock claimed that the results of his breath tests should be excluded from evidence because his consent for the tests was "coerced" by the police officers. It is undisputed that police officers arrested Haddock for DUI and gave him the statutory implied consent warning, codified in OCGA § 40-5-67.1 (b) (2). This warning includes the following phrase: "If you refuse this testing, your Georgia driver's license or privilege to drive on the highways of this state will be suspended for a minimum period of one year."

In the brief supporting his motion, Haddock asserted that the State of Georgia had ceased all efforts to prohibit non-resident drivers from driving on Georgia's roads. Therefore, Haddock, a non-resident with a Florida driver's license, contended that the implied consent warning was false and coercive to the extent that it stated that his driving privileges "will be suspended" for at least one year. However, Haddock cited no authority or source in his brief regarding this alleged cessation of enforcement of the statute by the State in his brief, nor was there any such reference in the record or motion hearing transcript. Therefore, there was no evidence to support a finding that the implied consent notice given to Haddock misrepresented in any manner the "legitimate consequences" of his refusal to submit to the tests.[4] See *Whittington v. State*, 184 Ga. App. 282, 284 (2) (361 SE2d 211) (1987); see also *Morrissette v. State*, 229 Ga. App. 420, 423-424 (2) (a) (494 SE2d 8) (1997); *Gutierrez v. State*, 228 Ga. App. 458, 460 (2) (491 SE2d 898) (1997); *Singleterry v. State*, 227 Ga. App. 155, 156 (3) (489 SE2d 42) (1997). This Court finds that, to the extent that the trial court based its grant of Haddock's motion on a finding that the State misrepresented the penalties for Haddock's refusal to be tested, thereby resulting in Haddock's "involuntary" expressed consent, such finding is clearly erroneous and must be reversed.

---

[3] See, e.g., *Mullinax v. State*, 231 Ga. App. 534, 535 (2) (499 SE2d 903) (1998); *Hamilton v. State*, 228 Ga. App. 285, 287 (4) (491 SE2d 485) (1997); and *Daniel v. State*, 227 Ga. App. 92, 93 (488 SE2d 129) (1997).

[4] This Court previously has noted that Georgia's implied consent statute accurately portrays the consequences of refusing an alcohol test, thereby allowing the driver to make a truly *informed* decision regarding whether to consent. *Roberson v. State*, 228 Ga. App. 416, 419 (491 SE2d 864) (1997). "The more objectionable alternative is to minimize the consequences of the driver's refusal, only to surprise the driver later with an unanticipated mandatory [suspension]. [Cit.]" Id.

*Judgment reversed and remanded. Pope, P. J., and Smith, J., concur.*

DECIDED DECEMBER 10, 1998.

*Stephen D. Kelley, District Attorney, James J. Presswood, Jr., Assistant District Attorney,* for appellant.
*John J. Ossick, Jr.,* for appellee.