**SECOND DIVISION**
**ANDREWS, P. J.,**
**MILLER, P. J., and BRANCH, J.**

**NOTICE: Motions for reconsideration must be**
***physically received*** **in our clerk's office within ten**
**days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**March 3, 2016**

# In the Court of Appeals of Georgia

A15A1928. WILLIAMS v. THE STATE.
A15A1929. ESPINOZA v. THE STATE

MILLER, Presiding Judge.

Following a joint jury trial, Stephen Williams and Felix Espinoza were convicted of cocaine trafficking (OCGA § 16-13-31 (a) (1) (2011)).[1] Williams and Espinoza appeal from the denial of their motions for new trial, contending that the trial court erred in denying their motions to suppress and in charging the jury. Espinoza also contends that the trial evidence was insufficient to sustain his conviction. For the reasons that follow, we affirm.

---

[1] Williams was also convicted of making an improper lane change.

Viewed in the light most favorable to the Williams' and Espinoza's convictions,[2] the evidence shows that, on July 9, 2010, based on information from a confidential informant, a DeKalb County sergeant set up an undercover surveillance at an apartment complex off Buford Highway in DeKalb County. At approximately 5:00 p.m., Williams and Espinoza drove into the apartment complex in a blue 2005 Ford F-250, and pulled up toward an apartment in Building E.

Williams and Espinoza entered the building and then walked back out together. When they exited the building, Williams and Espinoza were talking back and forth and Williams was carrying a black and grey Ralph Lauren duffle bag, which he did not have when he entered. Williams and Espinoza returned to the F-250, drove away from the apartment complex and proceeded onto I-85 North. Shortly thereafter, a detective[3] saw the driver of the F-250 make an improper lane change on I-85 in DeKalb County and initiated a stop of that vehicle. Williams was driving and Espinoza was sitting in the front passenger seat.

---

[2] *Jackson v. Virginia*, 443 U. S. 307 (99 SCt 2781, 61 LE2d 560) (1979).

[3] The detective was also involved in setting up the undercover surveillance of the apartment complex.

The detective approached the vehicle and asked Williams for his driver's license. Williams handed the detective a temporary paper license without a picture. Williams then told the detective that he was a truck driver from McDonough and he was "up here" to pick up a friend to take him to work. Espinoza told the detective that he had just gotten off one job and was on his way to his second job to lay concrete. The detective then noticed that Espinoza was well dressed, wearing expensive loafers, had manicured hands and did not appear to be someone in the construction business who was on his way to lay concrete.

The detective asked Williams and Espinoza to step out of the vehicle. The detective then asked Williams to step in front of the vehicle and told him that he needed a picture ID in order to confirm William's identity. While Williams looked through his wallet for another form of identification, he told the detective that he and Espinoza were on their way to purchase liquor at the liquor store on Highway 78. Williams' statement caught the detective off guard so he asked Williams why they couldn't buy alcohol at one of the stores in the nearby vicinity of Buford Highway. Williams' demeanor then changed from calm to nervous and he started rubbing his hand, looking around, and pacing. The change in Williams' demeanor prompted the detective to pat Williams down.

3

During the pat-down, the detective noticed a large bulge in Williams' left pocket. When the detective commented on the bulge, Williams pulled approximately $15,000 in cash out of his pocket. Williams then produced a picture identification, which the detective compared to the temporary license.

The detective returned Williams' identification and then asked Espinoza for his identification. When Espinoza produced a fake Georgia ID card, the detective asked Williams if he knew Espinoza and Williams responded that he did not. The detective was concerned about Williams' and Espinoza's conflicting stories, as well as Espinoza's fake identification, so he asked Williams for consent to search the vehicle. When Williams hesitated, the detective got his K-9 out of his patrol vehicle and conducted an open-air search.[4] The K-9 alerted to rear passenger side of the vehicle where the detective saw the black and grey Ralph Lauren duffle bag sitting in the middle of the backseat floorboard. The detective searched the bag and found three kilos of 70-percent pure cocaine with a street value of approximately $81,000 to $96,000.

---

[4] A backup officer stood with Williams and Espinoza during the open-air search.

1. Williams and Espinoza contend that the trial court erred in denying their motions to suppress the evidence found during the search of the F-250, which Williams was driving. Specifically, Williams and Espinoza argue that the detective impermissibly prolonged the stop beyond the time required to complete his investigation of the traffic offense. We disagree.

> First, when a motion to suppress is heard by the trial judge, that judge sits as the trier of facts. The trial judge hears the evidence, and his findings based on conflicting evidence are analogous to the verdict of a jury and should not be disturbed by a reviewing court if there is any evidence to support it. Second, the trial court's decision with regard to questions of fact and credibility must be accepted unless clearly erroneous. Third, the reviewing court must construe the evidence most favorably to the upholding of the trial court's findings and judgment.

(Citation and footnote omitted.) *Miller v. State*, 288 Ga. 286 (1) (702 SE2d 888) (2010); see also *Brown v. State*, 293 Ga. 787, 803 (3) (b) (2) (750 SE2d 148) (2013). "These corollaries apply to the extent that the material facts are disputed." *Hughes v. State*, 296 Ga. 744, 746 n.4 (770 SE2d 636) (2015).[5] "The State has the burden of

---

[5] We owe less deference to the trial court where facts can be definitively and exclusively ascertained by reference to uncontradicted evidence. *Hughes*, supra, 296 Ga. at 746 & n.5.

proving the legality of a search and seizure pursuant to a defendant's motion to suppress." *State v. Haddock*, 235 Ga. App. 726, 728 (510 SE2d 561) (1998).

> [A] seizure that is lawful at its inception can violate the Fourth Amendment if its manner of execution unreasonably infringes interests protected by the Constitution. A seizure that is justified solely by the interest in issuing a [traffic] ticket to the driver can become unlawful if it is prolonged beyond the time reasonably required to complete that mission. Thus, the tolerable duration of police inquiries in the traffic-stop context is determined by the seizure's mission – to address the traffic violation that warranted the stop, and attend to related safety concerns.

(Citations, punctuation and footnote omitted.) *State v. Allen*, __ Ga. __, *8-9 (Case No. S14G1765, decided, November 2, 2015).

Conducting an open-air dog sniff around a vehicle during a traffic stop does not in and of itself violate the Fourth Amendment. See *Allen*, supra, __ Ga. at *9-10. Like any other investigation unrelated to the traffic stop, a open-air dog sniff can be lawfully done as long as it does not prolong the stop for any amount of time. See id. at *10; see also *Rodriguez v. United States*, __ U. S. __ (135 SCt 1609, 1615, 191 LE2d 492) (2015). Accordingly, in this case, we must determine whether the open-air dog sniff that resulted in probable cause to detain Williams and Espinoza and to

6

search their vehicle "was done while some other task related to the mission of the traffic stop was still being conducted, so that the sniff did not add any time to the stop." *Allen*, supra, __ Ga. at *10 (2) (a).

Tasks related to the mission of the traffic stop include "checking the driver's license, determining whether there are outstanding warrants against the driver, and inspecting the automobile's registration and proof of insurance." (Citation omitted.) Id. at *12-13 (2) (b). Additionally, during a traffic stop, the investigating officer may order the occupants out of the vehicle and ask them for identification. See id. at *16-18 (2) (b)-(c).

Here, the evidence shows that prior to conducting the open-air sniff, the detective was conducting the ordinary activities of a traffic stop – he approached the F-250, questioned Williams about the traffic violation, and asked for both Williams' and Espinoza's identification. See *Allen*, supra, __ Ga. at *16-18 (2) (b)-(c). The detective conducted the open-air sniff right after Espinoza produced a fake Georgia ID, and the open-air sniff took only about five minutes to complete. Moreover, at the time of the open-air sniff, the detective was still confirming Williams' and Espinoza's identities. Under these circumstances, the open-air sniff did not lengthen the stop. See *Allen*, supra, __ Ga. at *9-10 (2) (a); *Rodiguez*, supra, 135 S. Ct. at 1618 (II).

7

Consequently, the trial court properly denied Williams' and Espinoza's motions to suppress.

2. Espinoza contends that the evidence was insufficient to sustain his conviction for cocaine trafficking. We do not agree.

Under Georgia law, any person "who is knowingly in possession of 28 grams or more of cocaine or of any mixture with a purity of 10 percent or more of cocaine . . . commits the felony offense of trafficking in cocaine[.]" OCGA § 16-13-31 (a) (1). Evidence that a defendant had joint constructive possession of contraband with another will sustain a conviction. See *Martinez v. State*, 303 Ga. App. 71, 73 (1) (692 SE2d 737) (2010). Moreover, one who intentionally aids or abets in the commission of a crime is a party to it. OCGA § 16-2-20 (b) (3).

> It is true [that] mere presence at the scene of a crime, even coupled with knowledge and approval, is insufficient to convict one of being a party. However, presence, companionship, and conduct before and after the offense are circumstances from which one's participation in the criminal intent may be inferred. A person will not be presumed to act with criminal intention, but the trier of facts may find such intention upon consideration of the words, conduct, demeanor, motive, and all other circumstances connected with the act for which the accused is prosecuted. If the totality of circumstantial evidence is sufficient to

8

connect the defendant with the possession of the drugs, the conviction will be sustained[.]

(Citations and punctuation omitted.) *Martinez*, supra, 303 Ga. App. at 73-74 (1).

Here, regardless of whether Espinoza had physical possession of the cocaine, the evidence as set forth above authorized the jury to find that he actively participated in, and was a party to, the trafficking of the three kilos of 70-percent pure cocaine that the detective found in the duffle bag which was in the back seat of the F-250. See *Dukes v. State*, 176 Ga. App. 815 (369 SE2d 259) (1988) ("actual possession required by OCGA § 16-13-31 to authorize a conviction for trafficking refers not merely to physical custody but refers to actual active participation in the possession of such substances so as to be a party to the crime of trafficking.") (citation and punctuation omitted); *Martinez*, supra, 303 Ga. App. at 74 (given defendant's conduct and surrounding circumstances, jury was authorized to find him guilty as a party to the crime of cocaine trafficking). Consequently, we affirm Espinoza's conviction for cocaine trafficking.

3. Williams and Espinoza contend that the trial court erred in charging the jury.

(a) Jury Charge on Probable Cause

(i) Williams and Espinoza argue that the trial court erred in charging the jury on probable cause.[6] We disagree.

In evaluating jury charges, this Court looks to the charge as a whole in determining whether there is error. *Sapp v. State*, 290 Ga 247, 251 (2) (719 SE2d 434) (2011). Here, the trial court gave the following jury charge on probable cause:

> During a lawful traffic stop an officer is permitted to use a drug sniffing dog to conduct an open-air search around the exterior of the vehicle. If the drug sniffing dog alerts, the officer has probable cause and is authorized to search the vehicle. Where there is probable cause to search a vehicle for contraband, an officer is permitted to search bags, containers, and packages within the vehicle.

The trial court also charged the jury on the presumption of innocence, the State's burden of proof, knowledge, mere presence, mere association, and party to a crime. Given the charge as a whole, and the overwhelming evidence which showed that both Williams and Espinoza actively participated in the crime of cocaine trafficking, it is highly probable that the trial court's charge on probable cause did not contribute to the jury's verdict. *Edwards v. State*, 264 Ga. 131, 133 (442 SE2d 444) (1994).

---

[6] Williams and Espinoza objected to the charge on probable cause on the grounds that the charge was not relevant and that the charge invaded the jury's province.

10

Accordingly, the trial court did not reversibly err in charging the jury on probable cause. *Stacey v. State*, 292 Ga. 838, 841 (2) (741 SE2d 881) (2013).

(ii) Williams and Espinoza also argue that the trial court's charge on probable cause as set forth above constituted an impermissible comment on the evidence in violation of OCGA § 17-8-57.[7] We disagree.

"Pursuant to OCGA § 17-8-57, it is error for any judge in any criminal case, during its progress or in his charge to the jury, to express or intimate his opinion as to what has or has not been proved or as to the guilt of the accused." (Punctuation and footnote omitted.) *McLean v. State*, 297 Ga. 81, 82 (2) (772 SE2d 685) (2015). Here, viewing the charge as a whole, we conclude that the trial court's charge as given did not violate OCGA § 17-8-57, because the charge did not assume certain facts or intimate to the jury what the trial court believed the evidence to be. See *Vergara v. State*, 287 Ga. 194, 197 (2) (695 SE2d 215) (2010) (trial court did not impermissibly comment on the evidence in charging the jury that "an armed robbery may be committed by killing the victim first and then taking the property.").

[7] Neither Williams nor Espinoza objected to the instruction at trial on the ground that it was an improper comment on the evidence. Their failure to object, however, "is inconsequential because a violation of OCGA § 17-8-57 is always plain error and failure to object will not preclude appellate review." (Citation and punctuation omitted.) *McLean v. State*, 297 Ga. 81, 82 (2) (772 SE2d 685) (2015).

(b) Espinoza contends that the trial court erred in failing to give his requested charge on knowledge of the presence of and activity surrounding illegal drugs.[8] We discern no error.

Here, as given, the trial court's pattern charges on knowledge, mere presence, and party to a crime substantially covered the correct principles of law. Accordingly, the trial court did not abuse its discretion in refusing to give the exact language of Espinoza's requested charge. See *Francis v. State*, 296 Ga. 190, 194 (2) (766 SE2d 52) (2014). Moreover, as set forth above, any error in failing to give Espinoza's requested charge was harmless in light of the overwhelming evidence showing that he actively participated in the crime of cocaine trafficking. *Edwards*, supra, 264 Ga. at 133. Accordingly, we affirm Williams' and Espinoza's convictions.

*Judgment affirmed. Andrews, P. J., concurs. Branch, J., concurs fully as to Divisions 1 and 2, and in judgment only as to Division 3.*

---

[8] Espinoza's requested instruction stated:

Knowledge of the presence of illegal drugs, and knowledge of the activity surrounding illegal drugs, and even approval of it which does not amount to encouragement, is not sufficient to support a guilty verdict.

12